# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _21-CV-01047-NYW-NRN_

(To be supplied by the court)

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAR 05 2023**

JEFFREY P. COLWELL
CLERK

_MOHAMMED MANSOUR JABARAH_ , Plaintiff

v.

_CHRISTOPHER WRAY, FBI DIRECTOR,_

_MICHAEL CARVAJAL, BOP DIRECTOR,_

_B. TRUE, ADX WARDEN_ ,

_JOHN AND JANE DOES_ , Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## PRISONER COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

MOHAMMED JABARAH (REG. NO. 06909-091)
USP FLORENCE -ADX, P O BOX 8500, FLORENCE, CO 81226-8500
(Name, prisoner identification number, and complete mailing address)

ABU-HAFS AL-KUWAITI
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____ Pretrial detainee
____ Civilly committed detainee
____ Immigration detainee
____ Convicted and sentenced state prisoner
_X_ Convicted and sentenced federal prisoner
____ Other: (*Please explain*) _____

## B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: CHRISTOPHER WRAY , FBI DIRECTOR
(Name, job title, and complete mailing address)
FEDERAL BUREAU OF INVESTIGATION
WASHINGTON, DC 20535

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

CHRISTOPHER WRAY WAS/IS FBI DIRECTOR AND
ACTS IN HIS OFFICIAL CAPACITY UNDER FEDERAL LAW

Defendant 1 is being sued in his/her _X_ individual and/or _X_ official capacity.

2



Defendant 2: MICHAEL CARVAJAL, BOP DIRECTOR
(Name, job title, and complete mailing address)
FEDERAL BUREAU OF PRISONS
320 FIRST STREET, NW, WASHINGTON, DC 20534

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? X Yes ___ No (*check one*). Briefly explain:

MICHAEL CARVAJAL WAS/IS BOP DIRECTOR AND

ACTS IN HIS OFFICIAL CAPACITY UNDER FEDERAL LAW

Defendant 2 is being sued in his/her X individual and/or X official capacity.

Defendant 3: B. TRUE, ADX WARDEN
(Name, job title, and complete mailing address)

ADX - FLORENCE, PO BOX 8500, FLORENCE, CO 81226-8500

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? X Yes ___ No (*check one*). Briefly explain:

B. TRUE WAS ADX's WARDEN AND ACTS IN

HIS OFFICIAL CAPACITY UNDER FEDERAL LAW

Defendant 3 is being sued in his/her X individual and/or X official capacity.

## C. JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

____ 42 U.S.C. § 1983 (state, county, and municipal defendants)

X *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

X Other: (*please identify*) FREEDOM OF RELIGION, FREE SPEECH, DUE PROCESS, AND EQUAL PROTECTION VIOLATIONS, RELIGIOUS FREEDOM RESTORATION ACT (RFRA) AND RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT (RLUIPA)

3

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: FIRST AMENDMENT VIOLATIONS - FREEDOM OF RELIGION

1.   Supporting facts: On or about October 24, 2019 Defendants C. Wray, M. Carvajal, B. True, John & Jane Does (as FBI agents) denied Plaintiff two Islamic Arabic books, namely "Majmu' Rasail wa Fatawa" (Book #1) and "Majmu Rasail wa Fatawa" (Book #2). Plaintiff recieved NO rejection notice at the time.

2. BOP policy Program Statement 5266.11 Incoming Publication states "... (b) The warden may not reject a publication solely because its content is religious, philosophical, political, or sexual, or because its content is unpopular or repugnant --- (d) The warden shall promptly advise the inmate in writing of the decision & reason for it [i.e. rejection]. The notice MUST contain reference to SPECIFIC article(s) with materials considered objectionable. The Warden Shall permit the inmate oppurtunity to review this material... (e) The Warden Shall provide the publisher or sender of an unacceptable publication copy of the rejection letter... "

4

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

3. None of the aforementioned BOP policy points were adhered to. Instead, at the time, on or about October 2019, Special Investigative Services linguist Mr. Alan Oliver verbally notified plaintiff of the rejection of the named books above. And only after nearly four years ADX Senior Attorney Mr. A. Dowel provided plaintiff with a rejection letter with very vague (& definitely UNspecific) reasoning for the rejection such as "... it [i.e. the books] contain 'inflamatory' materials & incites violence" (please see Exhibit A).

4. Both Mr. Oliver & Mr. Dowel explained to plaintiff that it was not the ADX's or BOP's decision to reject the books. Instead it was, they said, "the FBI made the decision", i.e., defendants C. Wray & John & Jane Does. This explains why the above-mentioned BOP policy was not adhered to at all, though it does not absolve defendants M. Carvajal & B. True of their enforcement of the FBI's arbitrary decisions.

5. Plaintiff is subjected to Special Administrative Measures or "SAMs". And eventhough SAMs section (9) (a) Access To Books clearly states that the BOP, not

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

the FBI, makes the initial determination about any books plaintiff recieves, the FBI very simply put bullied the ADX/BOP, i.e., defendants Carvajal and True, and arbitrarly took over the initial book review process without allowing the BOP any say in the approval and denial process (please See SAMs pages #15 & #16 in Exhibit B-1 & B-2.)

6. This aforementioned undeniable fact is very essential in understanding the merits of this Complaint. That is because once the FBI, i.e. defendants Wray, John & Jane Does, totally took over the books review process, it effectively rendered the BOP's Administrative remedy procedure useless. Because the BOP, at all levels, cannot — & has NEVER — reversed any decision made by the FBI

7. Still, plaintiff, notwithstanding this fact, exhausted the BOP's grievance procedure to no avail of course (please see Exhibits C & D). Defendants Carvajal & True diverted attention in their responses by addressing irrelevant issues, such as Hard Cover Removal Forms or not knowning the names of the books, which plaintiff did not complain about.

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

8. Additionally, since plaintiff initiated this Action, Defendants' retaliatory behaviour (i.e. abuse of authority) significantly increased.

9. On or about May 10, 2022, SIS Lieutenant Mr. Gonzales along with SIS Technicians Mr. Rob, and Mr. Lillard confiscated eight of plaintiff's religious books & one non-religious book.

10. ALL OF THE CONFISCATED BOOKS WERE PROPERLY ISSUED TO PLAINTIFF BY SIS OFFICE, WERE ALREADY REVIEWED & CLEARED BY THE FBI, AND WERE IN PLAINTIFF'S POSSESSION SOME AS EARLY AS 2016 (emphasis added).

11. On or about June 62, 2022 ADX's new Warden A. Cioll: & SIS Lt. Gonzales notified plaintiff verbally that the confiscation of the aforementioned books was a "joint BOP counterterrorism (CTU) unit & FBI" decision, and that neither the ADX nor the BOP can reverse.

12. Plaintiff believes such abuse of authority is a retaliation tactic by defendants in response to this Complaint. Because when plaintiff asked

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

STS Lt. Gonzales whether he is being accused of misusing the confiscated books for any nefarious activities. Lt. Gonzales responded "No, you're not. And I'm sure these books were cleared before. But probably new counterterrorism BOP and FBI agents reversed that decision."

13. Exhibits E1-8 showes pictures of twenty-eight of plaintiff's property (i.e. books), numbered (6) through (61) on the top left corner of each picture. The books with a check mark next to them - i.e. #'s 9, 11, 15, 18, 23, 37, 38, 49 & 56 - are the con-fiscated ones. Here is a brief identification of each book :-

 a.) Book #9 : Islamic/Arabic grammar
 b.) Book #11 : Biography of The Prophet Mohammed.
 c.) Book #15 : Prophetic Tradition Exegesis
 d.) Book #18 : Prophetic Traditions
 e.) Book #23 : Islamic jurisprudance
 f.) Book #37 : Islamic judicial principle
 g.) Book #38 : Quran Commentary
 h.) Book #49 : U.S. Senate Intelligence Report
 i.) Book #56 : Quran Exegesis

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

14. Plaintiff is a devout practicing Muslim. He observes the five obligatory daily prayers, fasts the month of Ramadan & endevours daily to live every minute & detail of his life in accordance with his Islamic religion guidelines. At the ADX (plus under SAMs) he is deprived of daily access to government-approved or private imam (i.e. Muslim Chaplin). All of the confiscated religious books along with the two rejected books are essential and central in addressing plaintiff's daily religious needs. His religious rituals have been significantly interrupted as a direct result of defendants' un-provoked retaliatory behaviour & abuse of authority. Due to the abscence of adequate Muslim Chaplin services at the ADX, plaintiff used to reference the confiscated religious books on daily basis for his religious needs, from understanding the Quran to follo-wing the traditions of the Prophet Mohammed to seeking answers to Islamic jurisprudence questions.

15. BOP policy Program Statemen § 5.53.13 Procedure for Handling Contraband states: "... (b) Staff shall dispose of items seized as contraband in accordance with the following procedure ... (1) Items of personal property

D. STATEMENT OF CLAIMS - CONTINUATION OF
CLAIM ONE

confiscated by staff are to be inventoried and
stored pending identification of the owner, (i)
Staff _Shall_ provide the inmate with a copy of
the inventory as soon as practicable...".

16. As of today plaintiff still has not been given
any explanation behind the confiscation of his
properly issued, cleared & reviewed religious books,
other than Warden A. Ciolli's words " it was a joint
BOP counterterrorism & FBI agents decision." The
fact that defendants cannot articulate any reason
behind their arbitrary & unprofessional behaviour
only proves that there is no legitimate penological
interest that could justify such abuse of authority.

17. Plaintiff respectfully submitts that defendants' actions
infringes on his First Amendment rights, when eval-
uated in light of the Turner Test.

18. Under the Turner Test four factors are relevant in
determining the validity of prison regulation that
infringes a prisoner's Constitutional right : (a) whe-
ther a VALID and RATIONAL connection exists bet-
ween the regulation and a LEGITIMATE penological

D. STATEMENT OF CLAIMS - CONTINUATION OF
CLAIM ONE

interest advanced as justification; (b) whether,
not withstanding the regulation, alternative means
exist for the prisoner to excersize the right; (c)
what effect an accomodation of the prisoner's
Constitutional rights would have on guards,
inmates, & prison reasources; and (d) whether an
alternative is availble which would accomodate
the prisoner's right at a di minimis coast to
valid penological interests.

19. First, defendants' failure to produce any VALID
and RATIONAL connection between their systemic
arbitrary decisions and a LEGITIMATE penological
intrest in rejecting the two Arabic Islamic books &
confiscating the eight religious books mentioned above
fails Turner Test's first factor (in addition to falling
short to satisfying BOP's policy as outlined above
in paragraph #2). Defendants' very vague reasons
such as "contains inflamatory materials" or "it is
a joint BOP counterterrorism & FBI agents decision"
cannot satisfy Turner Test's first factor.

20. Second we look at whether alternative means exist
for plaintiff. As stated above (paragraphs #5 & #6)

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

plaintiff has been subjected to SAMs. This means, in part, that ONLY the FBI (ie. defendants C. Wray & John & Janes Does) determines what religious materials he's allowed access to, whether personal or institutional. This means that not only do the FBI decides what personal religious books recieves via mail, the FBI also decide what the BOP is allowed to offer plaintiff with respect to ANY religious materials. Whenever ADX's Religious Services Staff wants to add any religious materials availble for plaintiff's use, they say "we have to get it cleared by the FBI first." Accordingly, plaintiff is left with no alternative means since every religious materials he's allowed access to is decided by the FBI. Thus, defendants' actions fail Turner Test's second factor.[1]

21. Thirdly, we examine what effect could happen to the ADX if plaintiff is given the two rejected books & the eight confiscated ones. First, the undisputed

[1] Eventhough plaintiff is under ADX's custody, the religious books availble to him via the Chaplin must be FBI-cleared.

D. STATEMENT OF CLAIMS - CONTINUATION OF
CLAIM ONE

fact that plaintiff possessed the confiscated eight
books throughout the whole time without any nega-
tive effect on the ADX staff, inmates or resources
should be sufficient to demonstrate how defendants'
actions fail under Turner Test's third factor.
Secondly, plaintiff has been detained under the
most restrictive form of solitary confinement for
the past twenty-one years (since 2002). He is
closely monitored by BOP's staff, his in & out
of prison communications are constantly reviewed
by the FBI and, most importantly, he has NEVER
been accused of any violence before or after
his arrest. Accordingly, since plaintiff's record
proves he's never misused his religious books in any
way that could negatively effect the ADX, this
again shows how defendants' action fail under Turner
Test's third factor.

22. Lastly, the remaining question under Turner Test's
fourth factor is whether an alternative is availble
to plaintiff. Besides the undisputed information
delineated above about the FBI's total, arbitrary
& unchecked control over all religious books plaintiff
has access to (please reference paragraph #20 above)

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

the only remaining alternative - which is also supervised by FBI monitoring - is ADX Religious Services. The ADX's Muslim Chaplin (i.e. imam) supervises not only the ADX, but instead the entire Florence Correctional Complex institution. This in part translates to one Imam for over one-thousand inmates. The Imam can hardly come by plaintiff's "SAMs H-unit" at the ADX once every two weeks (at best) just to say hello. Lengthy religious counseling is totally unavailble - 100% absent - leaving plaintiff no other alternatives than books which he can reference for religious counseling. The Chaplin's ADX "FBI-cleared" library has not significantly changed and/or updated its 300+ Arabic titles FOR THE PAST 16+ years. (emphasis added). As a matter of fact, the FBI two years ago removed over twenty titles authored by a fourteen century Muslim scholar "Ibn Taymiyyah" due to "National Security" concerns. Eventhough targeting religious books by specific authors goes against BOP Incoming Publications policy P5266-11, when it comes to ADX's SAMs inmates the FBI does whatever it wishes to do & no BOP official can object, regardless how arbitrary & abusive their decision is.

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

Additionally, plaintiff is not allowed to check out more than two titles per week, to be returned within two weeks. On more than one instance, titles plaintiff had requested were already checked out by other inmates. Accordingly, the aforementioned facts shows how defendants action fail under Turner Test's fourth factor.

23. Under The Religious Freedom Restoration Act (RFRA) and The Religious Land Use and Institutionalized persons Act (RLUIPA)[①], plaintiff must demonstrate he wishes to engage in (1) a religious excersize, (2) motivated by a sincerely held belief, & which excersize (3) is subjected to substantial burden imposed by the government.

24. Furthermore, a "Substantial burden" on religious practices is defined as; (1) requires participation in an activity prohibited by a sincerely-held

[①] Defendants had previously argued that "RLUIPA" does not apply to federal inmates. In Cutter v. Wilkinson, 544 U.S. 709 (2005), The Supreme Court held that all facilities that accept federal funds can be held liable under "RLUIPA".

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM ONE

religious belief, (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent --- to engage in a conduct contrary to a sincerely held religious belief.

25. As stated above (namely in paragraph #14) plaintiff is a devout practicing Muslim. The two rejected books besides the eight confiscated ones are all very central & essential to plaintiff religious practices, whether in understanding the Quran, the traditions of the Prophet Mohammed or answering questions in the field of Islamic jurisprudance.

26. Therefore, according to all of the aforementioned information (paragraphs #1-15) plaintiff is entitled to the religious protections under RFRA & RLUIPA.

CLAIM TWO : First Amendment Free Speech Violations
Supporting facts : Plaintiff reclaims all of the aforementioned information (paragraphs #1-26) as if they are stated herein in their entirety.

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM TWO

1. On or about June 06, 2020 defendants denied plaintiff two incoming books, namely, Official Senate Report On CIA, and The 48 Laws of Power[1]. Additionally, since the initiation of this Action, another book, The Caravan was rejected on or about October 06, 2021. (See Exhibits F, G & H)

2. In each rejection notice defendant B. True had no other option but to write down whatever defendants John & Jane Does (as FBI agents) instructed him to write, thus making him liable since he is the one who signed the rejection notices. The rejection notices do not satisfy the standards outlined in BOP Incoming Publication policy P.S. 5266.11 as explained above under CLAIM ONE paragraph #2. Because no specific citations in the rejected books were cited. Instead, very vague reasons were handed down from the FBI such as "... it depicts, discribes or encourages activities which may lead to the use of violence ..." (see Exhibit F) or "... it poses saffty & security risk"

[1] Eventhough the rejection happened on or about June, 2020 plaintiff did not recieve a rejection notice till 10-18-21.

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM TWO

(See Exhibit G) or "... because the subject of the book, Abdullah Azzam, is held as the father of Global Jihad" (See Exhibit H). Such very vague excuses falls short of the above-mentioned BOP Incoming Publication policy which requires "... the [rejection] notice MUST contain reference to SPECIFIC article(s) with materials considered objectionable"

3. Defendant M. Carvajal rubber-stamped defendant B. Trice's rejection in the BOP central office responses to plaintiff's appeal (See Exhibits I & J). No where in these responses or in the rejection notices do we find any VALID, LEGITIMATE OR REASONABLE penological interests (emphasis added), and indeed the only rational conclusion is that defendants arbitrary & undeterred behaviour is an EXAGGERATED response to unfounded concerns.

4. Lastly, to further establish a pattern of systemic violations & that defendants undeterred abuse of authority is not a random once-in-a-while committed error, throughout his 15+ years of confinement at the ADX, plaintiff had well over

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM TWO

forty books rejected in the same above-mentioned unprofessional & arbitrary manner. Some of these titles are : Sign Language, The Mission & The Kingdom, Global Salafism, and The Friends of Allah & The Friends of Shaytan (See Exhibits K, L, M & N)

5. In light of the aforementioned information; defendants actions once again fail under Turner Test four factors.

CLAIM THREE : Fourth Amendment Due Process Violation.
1. Supporting Facts : On or about January 11, 2021 Defendants M. Carvajal & B. True admitted in their Administrative Remedy response that "due to technical error" no rejection notices were issued for at least to incoming rejected books sent to plaintiff by his lawyer via approved bookstore, namely Jarir Bookstore, on May 28, 2020 (See Exhibit O)

2. Plaintiff became aware of the rejections only after he was notified verbally by Mr. Alan Oliver about the rejections. Plaintiff's lawyer contacted Mr. Oliver & provided him with a copy of the order's invoice along with a tracking number of the mailing

B. Statement of Claims - Continuation of Claim Three
order. (See Exhibits P & Q)

3. Mr. Oliver contacted the Mailroom & varified
that the books did infact arrive & then rejected
along with other books without any rejection notice
being issued.

4. The aforementioned information along with all of
the above-mentioned facts under claims ONE &
Two establish particularly defendant B. True's
consistent pattern of unprofessionalism & systemic
Due Process violations.

5. Moreover, shortly after initiating this Action,
on or about July 28, 2021 Defendants John &
Jane Does (as FBI agents & ADX SIS officers)
entered plaintiff's assigned cell (H-206) and
claimed to conduct a "cell search".

6. Defendants specifically targeted plaintiff's clearly
labled legal property related to this Action, namely,
Docket #'s 6, 7, 8 & 9 as well as legal research mate-
rials. Additionally, plaintiff's Canadian Consulate
Case files - i.e. diplomatic cables - which were all
properly issued to plaintiff by SIS office & were

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM THREE

clearly labled "Special Mail" on the surface of the envelop, with plaintiff's identification information as well as the Canadian Consulate's identification information all clearly & properly visible on the surfaces of the confiscated envelops were all seized. ANY CLAIMS THAT THE SEIZED FILES WERE/ARE CLASSIFIED INFORMATION IS TOTALLY & COMPLETELY FALSE (emphasis added). Indeed all of the files seized are availble on line to the public. Anyone in the world with internet access can download the allegedly "classified" files.

7. On or about August 02, 2021 ADX's legal Dept. staff told plaintiff - after he asked about his legal property that was confiscated - "We don't have your legal property. The FBI has it." Plaintiff had begun the BOP grievance procedure protesting such abuse of authority. He has exhausted the appeals at the ADX & Regional Director levels. His Central office appeal response is due May 12, 2023 (See Exhibits R.1-3)

8. None of the BOP's policy P.S. § 553.13 Procedure for Handling Contraband guidelines were adhered to.

D. STATEMENT OF CLAIMS - CONTINUATION OF CLAIM THREE

As of today, plaintiff has not recieved the required confiscation form - almost two years later...

9. The Federal Tort Claim Act may be an adequate post deprivation remedy for property deprivation by PRISON OFFICIALS (emphasis added). The Federal Tort Claim is investigated by The BOP's Regional Director's office. Neither the Regional Director's office nor the BOP has any jurisdiction over the F.B.I. Thus, plaintiff has no adequate post deprivation remedy for the confiscation of his legal property under the Federal Tort Claim Act since it's in the FBI's possession.

CLAIM FOUR : EQUAL PROTECTION VIOLATIONS

1. Supporting Facts : On or about July 31, 2020 Defendants M. Carvajal & B. True denied plaintiff Special/Halal Ceremonial meal for Eid al-Adha, Muslim's Holiest day of the year

2. Defendants Carvajal & True claim : "... the religious ceremonial meal is derived from items regularly avaible on the National Mainline Menu. No other

D. STATEMENT OF CLAIMS- CONTINUATION OF CLAIM FOUR

foods are authorized for ceremonial meals (See Exhibit S).

3. National Mainline food items are not certified Halal, i.e. Islamiclly compliant. On July 31, 2021 defendant B. True provided plaintiff on Eid al-Adha Holiday with a Mainline fried chicken meal. On or about August 05, 2021 both ADX Food Services administrator Mr. Kunduff & ADX Chaplin Mr. Fields notified plaintiff that the fried chicken meal provided on Eid al-Adha was not certified Halal. After having known about this undisclosed fact, plaintiff suffered immensly because following Islamic dietary guidelines is central in practicing his religion.

4. Every year on Passover Jewish inmates are accomodated with SPECIAL Kosher meals for eight straight days. Likewize, every year on Christmas SPECIAL ceremonial meal is made availble to all inmates, EXCEPT THOSE ON HALAL DIET (emphasis added). Thus, defendants Carvajal & True are clearly discriminating against plaintiff for his religious choice.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s): *MICHAEL GARCIA, et al.*

Docket number and court *08. Civ. 3592 (DC) Southern District of New York*

Claims raised: *1st, 4th, 5th, 6th & 8th Amendment Violations*

Disposition: (is the case still pending? has it been dismissed?; was relief granted?) *Dismissed without Prejudice*

Reasons for dismissal, if dismissed: *Change of venue*

Result on appeal, if appealed: _____

## F. ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

   _X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

   _X_ Yes ___ No (*check one*)

## G. REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

A.) Injunction Ordering Defendants to release all seized, rejected and/or all confiscated books. to Plaintiff.

B.) Punitive damages against Defendants on all Claims.

C.) Special damages against Defendants on all Claims.

D.) Tort damages against Defendants on Claims 1, 2 & 3

E.) Injunction Ordering Defendants to abide by SAMs section (9)(a) Access To Books

F.) Provide Plaintiff with Special/Halal meal on Eid al-Adha

## H. PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's signature)

Thursday April 27, 2023
(Date)

(Form Revised December 2017)